THE PEOPLE ex rel. BEEKMAN and others *vs.* BUNN, late sheriff of Montgomery.

Under the redemption acts the holder of the legal title to a junior judgment is entitled, on redemption, to receive a conveyance of the lands from the sheriff, irrespective of the equitable interests of others in the judgment under which he redeems.

Thus; sheriff sold lands under four judgments for $835.80. The first of those judgments was against L. and another, the second against L. and C., and the third and fourth against L. alone. There was a fifth judgment against L. alone for $9,000. Plaintiff in this judgment assigned it *absolutely* to four of his creditors to secure payment of $1,506.82, and one of the assignees transfered his claim to B. Plaintiff in judgment No. 5 made a second assignment of it to two other creditors, who transfered their claim also to B.; and said plaintiff then made a third assignment of his judgment to secure a debt of $1,280, and this was transfered to S. S. also became the owner of a judgment (No. 6) against L. and C. B. and two of the assignees in the first assignment of judgment No. 5 claimed to redeem the interest of L. alone, and paid the sheriff $582.06, being the amount bid at the sale less one half of judgment No. 2, which was against L. and C. S. offered to join in redeeming under judgment No. 5, but this was refused ; he then paid the sheriff $910, the whole amount bid and interest, and claimed to redeem under judgment No. 6 the interest of L. and C.; he also claimed to redeem the interest of C. alone under a judgment (No. 8) which he owned against C. One D. claimed to redeem the interest of C. alone, under a judgment (No. 7) against L. & C., and paid the sheriff $690, being one half of judgments Nos. 2 and 6, which were against L. and C., with interest. On motions for writs of mandamus requiring the sheriff to convey, *held,*

That the first assignment of judgment No. 5 transfered the whole legal interest in the judgment to the assignees thereof, and that B. and the two assignees who redeemed were entitled to a deed of the undivided share of L. in the premises.

It might be that they would hold the land in trust for S., as to the surplus after satisfying their own demands; but that did not affect their claim to have a conveyance from the sheriff.

It is no objection that one of the four assignees named in the first assignment of judgment No. 5 did not join the other two and the transferee of the third in the redemption, as between the latter and S.

When S. attempted to redeem under judgment No. 6 the interest of both L. and C., and paid but the amount bid at the sale, he failed to reach the interest of L. which B. and others had just purchased under judgment No. 5; and they were therefore entitled to the deed of L.'s interest in the premises.

*Held further*, as between S. and D., that S. had under judgment No. 6 redeemed C.'s interest in the premises, and was therefore entitled to the deed of that interest.

To entitle D. to a conveyance of C.'s interest, he should have paid what S. had necessarily paid on redeeming, and also the amount of S.'s judgment No. 6. (2 R. S., 372, § 55.) He (D.) could not redeem under § 54, as that section provides only for a creditor having a lien upon an undivided share of the property, and not upon the whole of it, as was the case with him.

A creditor having a judgment against two tenants in common of lands sold under execution can redeem the interest of one of the debtors. *Per* BRONSON, J.

JAMES CURRAN and Daniel Leonard were the owners as tenants in common in equal shares of a mill and ten acres of land in the county of Montgomery. There were several judgments which were liens upon the land, as follows: (1.) Henry Sponable v. Leonard & Oaks, $97.20. (2.) Jesse Klock v. Leonard & Curran, $602.35. (3.) Mills and others v. Leonard, $10.48. (4.) Fosdick v. Leonard, $125.68. (5.) James Curran v. Daniel Leonard, docketed December 1, 1842, for $9,000, on bond and warrant of attorney conditioned to pay $4,500. (6.) Saddler v. Leonard & Curran, $696.60, docketed January 10, 1843. On the 14th June, 1843, the sheriff of Montgomery sold the land by virtue of executions upon the four first mentioned judgments, and Jesse Klock became the purchaser for the sum of $835.80, being the amount due on the four judgments.

James Curran, the plaintiff in the fifth judgment, made a written statement by which it appeared that he was indebted to several persons, as follows: to George Lake $740.41; to Sarah Carter $420; to John Nellis $146.41; and to Jesse Curran $200; making in all $1,506.82. On this paper, after mentioning his judgment, he made an assignment as follows:

"For the purpose of securing the payment of the within mentioned $1,506.82 due this day to the persons within mentioned respectively, as within mentioned, to them, I hereby sell, assign and transfer to the said George Lake, Sarah Carter, John Nellis and Jesse Curran *the above mentioned judgment and all moneys owing thereon,* and authorize them to use all lawful means to collect the same to satisfy their claims and demands or liabilities, with interest, out of and from all moneys that may in any way be realized thereon, and respectively in the order within mentioned," &c. George Lake afterwards assigned all his interest in the judgment to the relator Beekman.

James Curran made a second assignment, by which, after reciting the assignment to Lake and others, he transfered the balance of the judgment to H. R. & N. Kennedy to secure several sums of money therein mentioned; and the Kennedys afterwards assigned their interest to the relator Beekman. By a third assignment, reciting the two first, Curran transfered his remaining interest in the judgment to the Herkimer County Bank to secure the payment of $1280. The bank transfered its interest in the judgment to Alfred G. Story. The judgment of Sadler v. Leonard & Curran (6.) had also been assigned to said Story.

On the 14th September, 1844, Beekman, Carter and Jesse Curran went to the sheriff and claimed to redeem under the judgment No. 5, Curran v. Leonard, and paid the sheriff $582.06, that being the amount bid on the sale, less one half of the judgment No. 2, which was against both Leonard and Curran—the assignees claiming to redeem Leonard's interest in the property only. At the same time Story appeared, also claiming an interest in the judgment No. 5, and offered to unite with Beekman and others in redeeming, and to contribute his proportion of the money. But Beekman and others would not consent to this proposition. Immediately after Beekman and others had paid their money, Story as assignee of the judgment No. 6, Sadler v. Leonard & Curran, claimed to redeem the interest of both Leonard and Curran in the premises. He paid to the sheriff $910, being the whole amount bid at the sale with interest. He insisted

that the redemption first made by Beekman and others was void, for the reason that they owned only a part of the judgment.

Story also claimed to redeem the interest of Curran only in the property, and in addition to what had already been done, he produced a judgment (No. 8) of the Herkimer County Bank against Curran, docketed January 20, 1843, for $2,331 62, whichad been assigned to said Story. Afterwards, on the same day Solomon Devendorf, Jr. claimed to redeem, so far as related to the interest of Curran, under a judgment in favor of said Devendorf against both Leonard and Curran (No. 7), docketed January 14, 1843, for $284.74; and he paid to the sheriff $690, being one half of the judgments Nos. 2 and 6, which were against both Curran and Leonard, with interest.

All the papers were in due form; and it was agreed that the court should order peremptory writs of mandamus, according as the rights of the parties should be adjudged.

The several parties made cross motions for writs of mandamus requiring the sheriff to convey according to their respective claims.

*J. A. Spencer* and *E. S. Capron*, for Beekman, Carter and Jesse Curran.

*A. Loomis*, for A. G. Story.

*N. Hill, Jr.*, for Devendorf.

*By the Court,* BRONSON, J.    The relators, Beekman, Carter and Jesse Curran, as the assignees of judgment number five, which was against Leonard alone, insist that they have acquired the title of the original purchaser to the share or interest of Leonard in the property. (2 R. S., 372, § 54.) This claim is resisted by Story on the ground that Beekman and others are assignees of a part only of the judgment number five; and no one can purchase but a creditor *having a judgment*, which must mean the whole of the judgment. (§ 51.)    It may be granted for all the purposes of the present

motion, that the assignee of a part only of a judgment can not become a purchaser under this statute; for I think the whole legal interest in the judgment was transfered to the assignees, leaving nothing but an equity in the assignor to be paid the surplus money, if any there should be, after satisfying the debts for the security of which the assignment was made. The language of the instrument clearly goes to the whole of the judgment, and there was nothing in the nature of the transaction which should restrict its legal influence. The trust in favor of the assignor in relation to the surplus was not expressed. It only arises by implication. Had it been expressed, the assignor would have retained nothing more than an equitable interest, which could not affect the legal title to the judgment.

Curran has transfered a portion of his equity, through the Herkimer County Bank, to Story; and it may be that Beekman and others will hold the land in trust for Story, so far as relates to any surplus after satisfying their demands. But that can not affect their claim to have a conveyance from the sheriff.

Another objection is made on the part of Story. Nellis did not go to the sheriff with the three other assignees at the time the purchase was made. But that only raises a question whether his name should be inserted as a grantee in the deed; or, if the deed should be given to the three, whether there would not be a trust in his favor. Those are matters between Nellis and his associates, with which other creditors can have no concern. If only one of the four joint owners of the judgment had gone to the sheriff, the absence of the others would not have invalidated the purchase. I need not say how it would be should the one claim to act for himself to the exclusion of the other owners, for no such question is made by this case.

When Story attempted to purchase under the Sadler judgment (No. 6), he paid nothing more than the original bid with interest. As he proposed to reach the interest of Leonard, as well as of Curran, he should have paid the whole or some part of the older judgment against Leonard under which Beekman and others had just before purchased.

Not having done so, he failed to reach the share or interest of Leonard, and as to that share Beekman and others are entitled to the deed.

The next question is between Story and Devendorf, and relates to Curran's interest in the property.

As Story paid the whole sum of money which was bid at the sale, with interest, he made an effectual purchase under the Sadler judgment (No. 6) of Curran's share or interest in the property. Although the judgment was against both of the tenants in common whose land had been sold, I think the creditor might purchase the share of one, without the other, on paying the whole sum bid at the sale. The case comes plainly within the 51st section of the statute. As the judgments Nos. 1, 3 and 4, and one-half of the judgment No. 2 had been paid on the purchase of Leonard's share by Beekman and others, it would, perhaps, have been sufficient for Story to pay the remaining half of judgment No. 2 with interest; that being the only prior unsatisfied lien upon Curran's share of the property. But he paid more, and thus brought the case within the very words of the statute.

Devendorf had the next lien (No. 7), and he also attempted to purchase the share of Curran. To effect that object he should have reimbursed to Story the sum which he had paid to acquire the title, with interest; or at the least so much as was necessarily paid by Story; and as the Sadler judgment was the prior lien, Devendorf should also have paid to Story the whole amount due on his judgment. (§ 55.) But he paid only half of the amount due on the Sadler judgment, and so failed to make an effectual purchase. He seeks to bring his case within the 54th section of the statute. But that section was made to provide for a creditor having a lien upon an undivided share, and not upon the whole of the property. (See *Erwin* v. *Schriver*, 19 John., 379.) Devendorf's judgment was against both Leonard and Curran, and his lien consequently extended to the whole of the property.

If a creditor having a judgment against both of the tenants in common can not, as I think he may, purchase the share of one only of the debtors, then neither Devendorf under

his judgment, which was against both of the tenants in common, nor Story under the Sadler judgment, which was also against both, acquired the interest of Curran in the property. But by proceeding another step we shall find that Story acquired it under the judgment of the Herkimer County Bank against Curran (No. 8), which was a lien upon the undivided share of Curran in the property which had been sold, and upon nothing more. That is the precise case provided for by the 54th section. Story paid more than was necessary to secure his object, but that could do no harm.

The result is, that the sheriff must execute a deed to Beekman and others for the undivided share of Leonard in the property, and to Story for the share of Curran.

Ordered accordingly